GREENE v. DUNCAN.

1. CONDITIONAL ACCEPTANCE—COMPLAINT—DEMURRER.—One S. wired plaintiff to tell defendant to pay plaintiff $300, and on presentation defendant endorsed thereon : "Whenever S. finishes his contract for the building of my two stores, I will honor the within order."   In action on this acceptance, defendant alleged in his answer that he had made no contract with plaintiff for the materials furnished, but that S. was to furnish all materials ; that, at the date of the acceptance, the work was not completed, and plaintiff knew it, and S. refused to work further, and defendant had

to have the buildings completed at a greater cost than the balance of S.'s contract price unpaid at time of acceptance. *Held*, that this answer stated facts sufficient to constitute a defence.

2. IBID.—ANTECEDENT PROMISES.—A draft accepted, "whenever S. finishes his contract for the building of my two stores," in the light of the undisputed and unexcepted to testimony, was a conditional acceptance, which superceded former communications; and the trial judge, when asked to charge that the acceptance was valid and binding, and rendered the acceptor liable, properly added that it was valid according to the terms of the acceptance.

3. IBID.—An acceptor of an order for money is liable to the holder, whether he has funds of the drawer or not, provided his acceptance was absolute and unconditional.

4. CHARGING JURIES—CONDITIONAL REQUESTS.—Where a party requests certain charges to the jury in the event of certain other requests being refused, and the trial judge charges all of them, his attention not being called to the matter at the time, no ground exists for an exception by such party.

5. CONDITIONAL ACCEPTANCE—LAW OF CASE.—A conditional acceptance becomes absolute when the condition is performed, and is discharged if not performed. But where the trial judge charged that it may operate as an equitable assignment of certain funds left in the acceptor's hands, if any, and to such charge no exception is taken, it is then for the jury to say whether any such funds were in hand.

6. CHARGING ON FACTS.—The inhibition of the Constitution as to charging on the facts extends only to disputed issues of fact, and not to matters as to which there is no conflict.

7. EXCEPTIONS—DISCONNECTED CLAUSE.—This court will not consider alleged error in a clause of a charge disconnected from its proper sentence.

8. AN EXCEPTION based upon a misconception overruled.

9. A GENERAL EXCEPTION, specifying no particulars of error, not considered.

10. CHARGE ON FACTS—REQUESTS.—There was no error in stating the testimony bearing upon a point as to which the appellant had requested a charge.


Before HUDSON, J., Union, October, 1891.


This was an action by F. C. Greene against T. C. Duncan, commenced in July, 1890. The complaint alleged that plaintiff had furnished materials to E. D. Sharkey, which were used by him in building stores for defendant, and that defendant had promised to pay a telegraphic order drawn by Sharkey on defendant in favor of plaintiff and accepted by defendant, as

set forth in the opinion of this court. Defendant answered *inter alia* as follows:

3. In answering the second paragraph of the complaint, the defendant alleges, that the materials for said buildings were not furnished by, or under any contract or agreement with, the defendant, and that the defendant is in no way liable therefor, and that he has no knowledge or information sufficient to form a belief as to the terms under which the said materials were furnished.

4. That the materials for said buildings were to be furnished by said E. D. Sharkey, under his contract with the defendant.

5. That at the time of giving the said order of October 18, 1888, by said E. D. Sharkey, the work was not nearly completed, which was well known to the plaintiff, and, under the said contract of building, there would still have been due to said E. D. Sharkey about $650 on his completion of said buildings, but after giving said order, the said Sharkey refused to complete said work, or to have anything more to do with it, although urged to complete it by defendant, and the defendant was compelled to employ another party to complete said buildings.

6. That the said E. D. Sharkey failed to perform said work, as far as he progressed with it, according to said contract, and on that account, and for the further reason that defendant was compelled to employ another person to complete said work at a much greater cost than he had contracted for with said E. D. Sharkey, the said E. D. Sharkey is considerably indebted to the defendant.

7. Denies all allegation not hereinbefore admitted or denied.

The judge charged the jury as follows:

*Mr. Foreman and gentlemen:* I have been requested by the counsel for the plaintiff to charge you certain propositions of law, which I will first notice. The first is: "That the telegram which is set out in the complaint, signed by T. C. Duncan, and promising to pay an order on him by E. D. Sharkey, and the endorsement on that order made by T. C. Duncan, when pre-

sented to him, F. C. Greene, must be construed together, and taken together, they constitute a valid and binding acceptance, and render the defendant liable as an acceptor." That is all right, so far as it goes. If the words were added, "valid according to the terms of the acceptance," then it would be a valid proposition. The proposition, with that qualification, is correct.

Second. "That an acceptance of an order, or an inland bill of exchange, by a person renders him liable to the holder of the bill, without regard to the fact whether or not the acceptor had funds of the drawer in his hands." That is very true, if the acceptance be absolute and unconditional.

Again :[1] "That the acceptance endorsed upon the order, as set forth in the complaint, renders the defendant liable as on a conditional acceptance, and that upon the performance of the condition, the acceptance becomes absolute, and the defendant can not shield himself by claiming that he has no funds in his hands belonging to the drawer." As a general proposition, that is correct, and I so charge.

Second. "That if the jury believe that Mr. Duncan went forward and completed the contract with Mr. Sharkey's money, then he became the agent of Mr. Sharkey to complete the building, and that was a sufficient compliance with the condition to entitle the plaintiff to recover as upon a conditional acceptance." That is very true, and I so charge.

"First," again.[2] "That the telegram and the endorsement on the telegraphic order in this case by T. C. Duncan constitute an equitable assignment of whatever fund the jury should find to be in Duncan's hands belonging to E. D. Sharkey after the expense of completing the building according to the original contract with Sharkey, up to the amount of plaintiff's order." That is correct, and I so charge.

"Second. That the defendant having set up an affirmative defence, the burden rests upon him to prove that defence by

[1] The two following requests were made, "if the presiding judge refuses to charge the above requests."—REPORTER.

[2] The remaining requests were made, "if the presiding judge refuses to charge any of the above requests."—REPORTER.

the preponderance of the testimony." That is correct, and I so charge.

"Third. That if the jury find that there is any money in the hands of T. C. Duncan belonging to E. D. Sharkey, and arising out of this transaction, then the plaintiff is entitled to recover the amount so found to be in his hands up to the amount claimed in plaintiff's complaint." That is correct, and I so charge.

"Fourth. That the defendant would not be entitled to claim any damages for work badly performed by Sharkey before the acceptance of the order in this case." Not if he knew it was badly done.

Let us see what this case is. It has consumed a good deal of time, and a great deal of learning has been displayed over the matter, and yet I think it is in a very small compass, and I will endeavor to make this as plain to you as I possibly can. The action, gentlemen of the jury, is based upon a certain contract between Mr. T. C. Duncan and Mr. F. C. Greene, arising out of certain telegrams and orders, and acceptance thereof, and I will, in order to show exactly what it is, read so much of the complaint as sets forth these telegrams. (Read the portion indicated.) It is upon that acceptance this action is brought. The plaintiff cannot repudiate that acceptance, because he brings his action upon that acceptance, and says that the building was completed by Mr. Sharkey, and that the money then became due, and that Mr. Duncan refuses to pay it, and he now brings this action. But the action is brought upon that acceptance. Whenever Mr. Sharkey completes the building, he will honor this draft. Then, I instruct you that this draft was not payable until Mr. Sharkey completed the building; and the defendant in the case explains why he put that conditional acceptance upon it, and that it was done, and the matter argued and reasoned over in the presence of the plaintiff. Mr. Sharkey, he stated, was not a responsible man pecuniarily, was under no bond, and might, perhaps, from some cause or other, fail to complete the building, and leave him in the lurch; and, therefore, he would not make himself, and did not intend to make himself, responsible to Mr. Greene until Mr. Sharkey could finish the building according to his contract.

There stands the matter between Mr. Greene and Mr. Duncan, and the only claim Mr. Greene has upon Mr. Duncan is upon this contract. It is not a claim here for any lumber, or anything of that sort, that Mr. Greene let Mr. Sharkey have; not at all—it has nothing to do with that. It is upon that order and the acceptance. Then, the fundamental inquiry is: Did Mr. Sharkey complete the building according to his contract? Sharkey says he did not; he says he went off and left it. That ought to be good evidence on the defendant's side. Mr. Duncan says he did not do it, Mr. Wells says he did not do it, and there is no witness who says that he did. If he jumped his contract, quit his contract, and did not complete it, and Mr. Duncan had to get somebody else to complete it, then, one of the fundamental terms or conditions of acceptance there is gone. So that the question now arises whether Mr. Duncan, after he got some one else to take hold of the work and complete it, had still in his hands money enough honestly due Mr. Sharkey to pay this draft. If he did, why, it ought to be paid.

The evidence now of the defendant is that when he accepted this draft, he had already paid Mr. Sharkey $4,060; that in order to get the contract completed, after Mr. Sharkey had abandoned it, he had to pay Mr. Wells $650, and that he then also had to pay $200 for some material that some parties furnished Mr. Sharkey for that particular building, and that in order to complete the building he had to pay out in all between $4,900 and $5,000. Mr. Sharkey was to do it for $4,500, and move the old building for $275. If Mr. Duncan's evidence is true—if it is true that he has had to pay out in order to get this contract which Mr. Sharkey did not finish—in order to get it finished, he had to pay out more money than the moving of the old building and the building of the new amounted to—if that is true, where is any money for Mr. Greene? If there is no money in the hands of Mr. Duncan, Mr. Greene can not get any, if Sharkey voluntarily abandoned his contract, and forced Mr. Duncan to spend these amounts to get the building finished.

It is contended by the plaintiff's counsel that that was unnecessary, because Mr. Sharkey says $250 would have completed it. You have that evidence, but you have the evidence of Mr.

Wells to the effect that to have completed the building accord-
ing to the original specifications after Mr. Sharkey left it, would
have taken $3,000, because of so much bad work done in it,
that he would have to tear the thing down so much.  If I am
wrong in that, have me corrected.  It was in the letter, which
was made evidence, that it would have taken $3,000 to have
made that building what Mr. Sharkey, under those specifica-
tions, was to have made it, but in order to finish it so that it
would do, he would take the contract for $650.  That is the
substance of what he said.  He contracted, and contracted
lower than he should, because he was anxious to get to finish
it.  That is the substance; I don't give the language.  You
have got as evidence all the substance of it, and if you find as
a fact that Mr. Sharkey abandoned that work, and brought
about the very state of things that Mr. Duncan was appre-
hending when he signed that acceptance, and that Mr. Duncan
fairly and honestly had to expend to finish up that building
more money, together with what he had paid Sharkey, than he
had originally contracted for, and that he has now got no money
in his hands due to Mr. Sharkey, that is the end of the case;
you are obliged to find for the defendant, and you can find for
the plaintiff only in the event that you find that after all these
expenses, which Mr. Duncan has explained to you, he still has
money of Sharkey in hand that he can give Mr. Greene.

Mr. Duncan's testimony is, that he paid Sharkey $4,060, and
afterwards $200 for the material that Sharkey did not pay for,
and $650 to Wells, making $4,910, and if that be so, and you
find that it was all fair and right on the part of Mr. Duncan in
these transactions, your verdict will have to be for the defend-
ant.  I charge you, that the amount, if paid as testified to by
Mr. Duncan, was proper, because it was necessary to be paid
in order to complete this matter.  If it was necessary, it was
proper.  If you find for the plaintiff, you will fix the amount,
say, "We find for the plaintiff so many dollars," but if you
find that Mr. Duncan is not due anything on this order, that
is, not due anything to Mr. Sharkey, your verdict will be for
the defendant.  Find your verdict upon this paper.  If you

find for the plaintiff, fix the amount; if you find for the defendant, say, "We find for the defendant."

Verdict was for defendant, and plaintiff appealed.

*Messrs. Graydon & Graydon,* for appellant.

*Messrs. Duncan & Sanders,* contra.

September 26, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. This action was tried before his honor, Judge Hudson, and a jury, at the October term, 1891, of the Court of Common Pleas for Union County. After verdict for defendant, judgment was duly entered. Plaintiff now appeals, raising four classes of exceptions. 1. Error of Circuit Judge in not sustaining plaintiff's demurrer to paragraphs 3, 4, 5, 6, and 7 of defendant's answer, because they failed to state facts sufficient to constitute a defence. 2. Error of Circuit Judge in not holding, on a request therefor, that the *acceptance* sued on here was a valid and binding acceptance, and rendered the defendant liable as an acceptor. 3. Error of Circuit Judge in not holding that if the *acceptance* was a conditional· one, that then the only question for the jury was, "Has the condition been performed?" 4. Error of the Circuit Judge in his charge to the jury by an expression of his opinion as to the facts.

1. It is scarcely necessary for this court to do more in reference to plaintiff's demurrer than was done by the appellant himself, in his argument before this court on this point, viz., do nothing; for by this action of appellant, we might imagine that he was willing to forego this exception. However, in the abundance of caution, we have examined the pleadings to see if this objection was tenable, and fail to find any just grounds therefor.

2. This and the succeeding exceptions have raised very nice points of law, not only of interest because of the legal learning involved in their consideration, but also because of their belonging to that branch of the law that affects society in every quarter alike, viz., the law relating to commercial transactions.

It seems that in 1888, the defendant made a contract in writing with one E. D. Sharkey, whereby the latter agreed to build a block of brick stores for the defendant in the town of Greenwood. Sharkey was to furnish all the labor and materials needed to build the block of stores, according to the written specifications, for the sum of $4,550, and to move a house for $275, additional. On the 18th of October, 1888, the said Sharkey had not finished the buildings. During the progress of Sharkey's work on such buildings he had purchased some material. therefor from the plaintiff Greene, who, becoming uneasy as to the payment of his bill therefor, wrote to Duncan, the defendant, at Union C. H. (his place of residence), asking him for payment of his bill. Duncan replied by telegraph, on October 12, 1888 : "Get Sharkey to give you an order on me for the amount at once, and I will pay it."

Nothing was done by Greene, the plaintiff, until the 18 October, 1888, at which date, Duncan being in the telegraph office at Greenwood, Greene again applied to him to help him secure his debt. Duncan, in reply, stated he would do any thing he could to help him. Thereupon Greene telegraphed to Sharkey in these words : "Can't you wire Mr. Duncan to pay me three hundred dollars? I am in trouble. Please answer at once." Sharkey on same day telegraphed Greene : "Tell Duncan to pay you three hundred dollars for me." When this telegram was shown Duncan, he told Greene : "It is a matter of course that I cannot pay you any money until Mr. Sharkey finishes the building; Sharkey is not a responsible man, and I have no, guarantee that he will ever finish those buildings. I will promise you this much : that when I accept this order; under the conditions on which I will accept it, I will never pay Mr. Sharkey another cent until those buildings are completed; it makes no difference what may be the demands that will be made." Thereupon Duncan, the defendant, wrote, on the back of the telegram sent to Greene by Sharkey; these words : "Whenever Mr. Sharkey finishes his contract for the building of my two stores in the town of Greenwood, I will honor the within order." Sharkey was told by Duncan what he had done. Sharkey requested an advance by Duncan: of $25, so

that he could go back to Greenwood, and Duncan refused to make the advance.

Sharkey never touched the work afterwards, and upon the written demand of Duncan, accompanied by a notice, that if Sharkey failed to do so within a specified time, he would let the completion of the building to some one else, Sharkey failed and refused to complete the work. Hence, Duncan consulted others, with a view to having the work completed according to the specifications adopted by Sharkey. He was informed that the work could not be completed under Sharkey's contract, in view of the poor work of Sharkey, and the balance of the work to be done, at less than $3,000. This Duncan refused to do, but by curtailing the work contemplated in his contract with Sharkey, he (Duncan) got another contractor to finish the work for $650, which was done, and paid for by Duncan. Duncan had paid Sharkey up to 18 October, 1888, $4,060. He also paid $200 for material used by Sharkey, making his payments between $4,900 and $5,000, while his contract with Sharkey only called for an aggregate payment of $4,825.

The plaintiff in his complaint set out the employment by Duncan of Sharkey; the fact that plaintiff furnished some material to Sharkey; the application of plaintiff Greene to Duncan to pay plaintiff's account against Sharkey; all the telegrams above recited; that, on the 18 October, 1888, Duncan had $800, or more, in his hands, belonging to Sharkey; that Sharkey, or some one for him, had long since finished Sharkey's contract for the building in question; that Duncan refused to pay the order. In his answer, the defendant admitted his contract with Sharkey; all the telegrams and the acceptance of the order in the language complained; denied that Sharkey had ever completed the contract; alleged its completion by himself; denied that he, on the 18th October, 1888, owed Sharkey $800, and denied that, at the date of the suit, he owed Sharkey anything; and also denied his liability to pay the order.

At the hearing, the foregoing facts, given as a history of the transactions, were put in evidence. The plaintiff requested

the judge to charge : "*a.* That the telegram, which is set out in the complaint, signed by T. C. Duncan, and promising to pay an order on him by E. D. Sharkey, and the endorsement on that order made by T. C. Duncan when presented to him by F. C. Greene, must be construed together, and, taken together, they constitute a valid and binding acceptance, and render the defendant liable as an acceptor." The judge, in his charge to the jury, said : "That is all right, so far as it goes. If the words were added, 'valid according to the terms of acceptance,' then it would be a valid proposition. The proposition with that qualification is correct." Was the judge in error as to this qualification? Appellant lays stress upon the word "whenever," urging that its meaning here is "at whatever time," citing Webster as his authority therefor. Suppose we were to read the acceptance with these words substituted for the word "whenever," could we escape the undisputed testimony to which no exception was taken at the trial, that the parties, both Greene and Duncan, agreed that this acceptance should operate as a conditional acceptance, or, as it is expressed in the testimony, an acceptance on condition?

It must always be borne in mind that the plaintiff, on the 18th October, 1888, elected to take the written acceptance of Duncan. Not only so, but he has complained upon the order of Sharkey with the qualified acceptance by Duncan endorsed thereon. It seems to us that if he had chosen to rely as his cause of action against Duncan upon Duncan's telegram of the 12th of October, agreeing to pay the order if obtained at once, [1] and the order by telegraph of Sharkey of the 18th October, 1888, there might be greater force in his reasoning; but having in fact allowed Duncan to qualify his acceptance of the order, and also having embodied that qualified acceptance in his complaint, he cannot now escape the consequences legitimately flowing from his own acts. It is well understood as the law

[1] One of the plaintiff's exceptions was : "Because it was error to charge the jury that the action was brought upon the acceptance alone, which was endorsed upon the order; said action being brought upon all the telegrams set out in the complaint, as well as upon the acceptance endorsed on the order."

32—37

pertaining to acceptances, that if the acceptor desires to limit his liability thereunder, he must do so at the time of such acceptance, and if in writing, to be incorporated as a part thereof. As is said by Mr. Justice Wayne, in *The United States* v. *Bank of the Metropolis*, 15 Peters, 395: "If one purpose making a conditional acceptance only, and commit that acceptance to writing, he should be careful to express the condition therein."

After a careful consideration of this point in the appeal, we conclude that the Circuit Judge committed no error here. A Circuit Judge must make his charges on propositions of law have reference to the issues involved in the case before him. As it has often been held, it is no part of his duty, when he comes to charge the jury, to embrace deliverances by him on abstract or theoretical propositions of law in no wise applying to the issues before him. It is perfectly competent for him, if he regards any requests to charge to belong to this last category, to decline to consider them. Of course, if he should err in his judgement in these particulars, he would be reversed here on appeal.

"*b*. That an acceptance of an order or an inland bill of exchange by a person renders him liable to the holder of the bill, without regard to the fact whether or not the acceptor had funds of the drawee in his hands." The Circuit Judge held: "That is very true, if the acceptance be absolute and unconditional." The quotation made by appellant from the case of *Short* v. *Blount*, 99 N. C., 49 (5 S. E. Rep., 191), is: "By the acceptance of a bill of exchange is meant the act or declaration by which the drawee therein named evinces— makes manifest—his assent and agreement to comply with and be bound by the request and order contained in the bill directed to him, according to its tenor, *if the acceptance be absolute* (italics ours). It is, in substance, an agreement to pay the sum of money specified in the bill, as therein directed. 1 Chit. Bills, 281; Story Bills, § 238; 1 Pars. N. & B., 281. No particular words, or form of words, or manner, are necessary to a valid acceptance, but it should generally be in writing, because that is orderly, promotes the convenience of business transactions, renders them more certain, and facilitates the proof of accept-

ance." We accept this enunciation of the law as correct. By its very terms it supports the Circuit Judge. All that is said is true, *provided the acceptance is absolute.* That is exactly what the charge provides. There is no error here.

"*c.* Because his honor having charged the jury, as requested in the second part of the plaintiff's requests to charge, it was error in his honor to charge the jury, as requested in the third part of plaintiff's request to charge, said request being made upon the condition that he refused the first two propositions of plaintiff's requests to charge, and the subdivisions thereunder." The appellant, as plaintiff, used this language to the Circuit Judge, in regard to the conditional requests to charge: "If the presiding judge refuses to charge the above requests, then the plaintiff requests him to charge," &c., some additional requests. Certainly, it cannot be questioned that the plaintiff's language was susceptible of the construction placed upon it by the Circuit Judge. Besides, the plaintiff's counsel were in court, giving close attention to the judge's charge, and, if an inadvertent mistake was made of the requests by the judge, his attention should have been called to it. Much must be left to the wise discretion of the trial judge in the matters of detail, in the trial of causes. His decisions, upon the order of business in this court, will seldom be interfered with. In his order settling the case, the Circuit Judge says: "I remark, in the outset, that no exceptions to my charge to the jury were taken by either party at the trial." This must guide this court, and we overrule this exception.

3. The third proposition of the appellant is: "That, if the acceptance is a conditional one, then the only question for the jury was, whether or not the condition had been performed." Now, it must be remembered that the judge only charged it as a general proposition, that "the acceptance, endorsed upon the order as set forth in the complaint, renders the defendant liable as on a conditional acceptance, and that, upon the performance of the condition, the acceptance became absolute, and the defendant cannot shield himself by claiming that he has no funds in his hands belonging to the drawer." This charge of the judge would have been conclusive

of this case, *if Sharkey had finished his contract for the building of defendant's two stores, in the town of Greenwood.* It is unquestioned law in this State, that a conditional acceptance becomes absolute when the condition is performed. *Hunton* v. *Ingraham,* 1 Strob., 271. The plaintiff, if this proposition alone was involved, would have had his case to terminate adversely to him the moment it was in proof that Sharkey did not carry out his contract, and that thereby he had not fulfilled the condition attached to the acceptance of the order. Additional life, for the time being, at least, was given to the plaintiff's case by that proposition of law that was charged by his honor, and to which no exception was made by defendant, and which thereby becomes the law in this case: "That the telegram, and the endorsement on the telegraphic order in this case by T. C. Duncan, constituted an equitable assignment of whatever fund the jury should find to be in Duncan's hands, belonging to E. D. Sharkey, after the expenses of completing the building according to the original contract with Sharkey, up to the amount of the plaintiff's order." It thereby became a question of fact, under this charge, for the jury to determine, and the appeal here will be dismissed, unless there can be discovered some grounds for a new trial under the next, which is the last, exception of appellant.

4. Was there a charge upon the facts at the trial by the Circuit Judge? There is no longer room to doubt that this court will enforce the observance in the Circuit Court of the rule prescribed by the Constitution of this commonwealth, whereby it is denied to judges to express an opinion to the jury upon the facts. This rule is admitted on all hands. The duty of this court is to determine if the trial judge trenched upon this rule. Did he, in his charge, express an opinion upon the facts? This court, in *Woody* v. *Dean,* 24 S. C., 505, held: "What is meant by the constitutional inhibition upon a judge in charging on the facts, as we understand it, is, that *as to any disputed matter of fact in issue between the parties*" (italics ours), "while he may state the evidence, read it over to the jury, or state it orally, yet is not permitted to give his opinion as to its force and effect." Here is a judicial

construction of this provision of the Constitution, and by its express terms such inhibition extends only "to any disputed matter of fact in issue between the parties." Now, let us see in the "Case" if the trial judge did comment upon any such disputed matter of fact; for if he did, it was a fatal error, but if he did not so err, the judgment will stand.

The 10th ground of appeal complains that there was error in this particular in this part of the judge's charge: "Then, the fundamental inquiry is, did Mr. Sharkey complete the building according to his contract? Sharkey says he did not; he says he went off and left it. That ought to be good evidence on defendant's side. Mr. Duncan says he did not do it, Mr. Wells says he did not do it, and there is no witness that says he did. If he jumped his contract, quit his contract, and did not complete it, then one of the fundamental terms or conditions of acceptance there is gone." If there was no testimony opposed to such failure of Sharkey to complete the contract, we are at a loss to see where was any disputed matter of fact in issue between the parties. Here all the testimony was on one side. Such being the condition of this matter of complaint, let us turn to the next in order.

The 11th ground of appeal is: "Because his honor erred in charging the jury as follows: 'And you can find for the plaintiff only in the event that you find that after all these expenses that Mr. Duncan has explained to you, he still has money of Sharkey in hand that he can give Mr. Greene,' said charge taking out of the hands of the jury the question as to whether the expenses were proper or not, and being in direct conflict with the request of plaintiff to charge the jury that the order in this case and the endorsement thereon rendered the acceptor liable as on a conditional acceptance." By reference to the "Case," it will be seen this is *a clause* of a sentence. This court will not lend itself to such an injustice to the Circuit Judge; of course, it is not intended to say that there was any intention on the part of counsel to do the Circuit Judge this injustice. Counsel may as well understand, and comply therewith, that this court will pursue this course in such cases.

Next. This is the 12th ground of appeal: "Because his honor

erred in charging the jury as follows : 'I charge you, gentlemen, that the amount paid as testified to by Mr. Duncan was proper, because it was necessary to be paid in order to complete this matter. If it was necessary, it was proper,' said charge being upon the facts of the case, in violation of article IV., section 26, of the Constitution, and taking away from the jury, even under the judge's view of the case, one of the material facts in the case." By reference to the "Case," the foregoing is not a faithful reproduction of the language used by the trial judge. It should have read: "I charge you, gentlemen, that the amount, *if* paid, as testified to by Mr. Duncan," &c. The addition of this word "if" makes everything plain. The judge was charging upon a hypothetical statement of the testimony and the law that would govern the jury in such case. This was not error.

Next. The 13th ground of appeal is: "Because said charge, taken as a whole, clearly intimates the judge's opinion upon the facts of the case, and is in violation of the Constitution of the State, prohibiting judges from charging upon the facts of the case." We scarcely think, with all the patience of this court, that the appellant can seriously urge such a general impeachment of a judge's charge for error, and, under the well known rules regulating the hearing of appeals, expect a consideration of it. We are sure that in this case itself the court has taken great pleasure in considering all the grounds presented to us (and they are not few), but, in all candor, there must be a limit to exceptions when too general, and we think the limit is easy of sight in the case at bar, so far as this ground of appeal is concerned.

Lastly. In the 14th ground of appeal it is alleged as error: "Because the presiding judge having charged the jury that Duncan would not have any right to claim damages against Sharkey for work badly performed by Sharkey, before the order was accepted, and there being no evidence upon that point, it was error in his honor to state the testimony as to the damages on the building being badly constructed, before the acceptance of the order." It will be learned by a reference to the "Case" that the judge, in his charge on the 4th

subdivision of class III. of the requests to charge, added the words to such request relating to the subject of Duncan's rights to claim damages for work badly performed by Sharkey, before he accepted the order: "Not if he knew it was badly done." No exception has been taken to this exposition of the law on this subject by the trial judge, and for this case it is law, this request having been called forth by the appellant, and the trial judge stating to the jury such testimony as bore on this point, to the end that the jury might consider the whole case as developed at the trial.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.